**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **BALRAM BALRAM** | **CIVIL ACTION NO. 3:26-2704** |
| | **SECTION P** |
| **VS.** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Petitioner Balram Balram,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 6]. For reasons below, the Court should deny the petition.

**Background**

Petitioner is a citizen of India. "Petitioner entered the United States on or about April 22, 2023 without inspection. He was apprehended at or upon his arrival and ultimately released[3] by ICE. Petitioner resided continuously in the United States for over three years complying with all conditions of his immigration proceedings, attending his ICE check-ins filing for asylum, and appearing at all required check-ins and hearings." [doc. # 1, p. 2]. "Petitioner also has a work

---

[1] Petitioner's "A Number" is 246-775-841 .

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[3] [doc. # 1-2, p. 2].

permit and social security card. Prior to getting detained by ICE, Petitioner worked as a truck driver for JN Transport." *Id.* at 7.

ICE re-detained Petitioner on June 9, 2026. [doc. # 1, p. 2].

Petitioner filed this proceeding on July 26, 2026. [doc. # 1]. He claims that the Government is violating his right to due process by denying him a bond hearing/individualized custody determination. *Id.* at 8. He argues in part: "Petitioner will remain in mandatory detention without any individualized custody review through what could be months or years of further proceedings. The constitutional deficiency is not merely the length of detention to date but the complete absence of any process by which Petitioner can challenge the necessity of his detention at any point." *Id.* at 9.

Petitioner also claims: "the proper detention authority for a noncitizen who entered without inspection and was apprehended in the interior of the United States more than three years later is 8 U.S.C. § 1226(a), which entitles him to a bond hearing before an Immigration Judge." [doc. # 1, pp. 10-11].

Finally, Petitioner claims, "Respondents have not conducted any individualized assessment of whether Petitioner is eligible for parole under § 1182(d)(5)(A), despite the urgent humanitarian circumstances presented by Petitioner's pending asylum claim, his compliance with immigration proceedings for over three years, and his lack of criminal history." [doc. # 1, pp. 11-12].

On August 24, 2026, an immigration judge ordered Petitioner removed to India. [doc. # 6-2]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); the appeal is pending.

Respondents opposed the petition on September 1, 2026. [doc. # 6].

## Law and Analysis

**I. 8 U.S.C. § 1225 Versus 8 U.S.C. § 1226**

The Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th 494, 502 (5th Cir. 2026). In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Under Section 1225(b)(1)(B)(iii)(IV) (emphasis added), "Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Under section 1225(b)(2)(A) (emphasis added), "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."

Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to bond or a bond hearing. The Court should dismiss his statutory claim accordingly.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles him to a bond hearing.

In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court

> concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[4] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On August 24, 2026, an immigration judge ordered Petitioner removed to India. Petitioner appealed the removal order to the BIA; the appeal is pending. His appeal is extending his detention until the BIA decides his appeal. Petitioner's detention will likely end (i) when his order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor.

Accordingly, the Court should deny Petitioner's claim. Petitioner may re-file his claim if his detention becomes indefinite or potentially permanent.

**III. Consideration for Parole**

Petitioner claims, "Respondents have not conducted any individualized assessment of whether Petitioner is eligible for parole under § 1182(d)(5)(A), despite the urgent humanitarian

---

[4] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

circumstances presented by Petitioner's pending asylum claim, his compliance with immigration proceedings for over three years, and his lack of criminal history." [doc. # 1, pp. 11-12].

Noncitizens detained under 8 U.S.C. § 1225(b) may be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Here, however, Petitioner does not state that he ever requested parole under Section 1182. Nor does he state that he lacked the opportunity to present such a contention in his removal proceedings.

Even assuming Petitioner did request parole under Section 1182, and to the extent DHS denied parole, this Court would lack jurisdiction to review the denial because the denial is discretionary. 8 U.S.C. § 1182(d)(5)(A). Under 8 U.S.C. § 1252(a)(2)(B)(ii), "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-- . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." [5]

[5] Petitioner's removal order is not final because he is appealing it. Section 1252, however, is not limited to final orders of removal. It is titled, "Judicial review of orders of removal." 8 U.S.C. § 1252. But the title does not reference the word, final. And even if it did, a statute's title does not control the plain meaning of its text. *See Brotherhood of R.R. v. Baltimore & O.R. Co.,* 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (explaining that the heading of a statute cannot limit the plain meaning of its text). Further, while subsection "(a)" references final orders of removal, it is distinct from, and does not control, other subsections. *See Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 214 (D. Conn. 2000) ("because § 1252 [is] both complicated and prolific, it addresses a multitude of jurisdictional issues, including ones that are collateral to the review of a final order of deportation." (citing *Van Dinh v. Reno,* 197 F.3d 427, 431–32 (10th Cir.1999)).

The Court should deny this claim.

**Recommendation**

For reasons above, **IT IS RECOMMENDED** that Petitioner Balram Balram's petition be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*****, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 28th day of September, 2026.

Kayla Dye McClusky
United States Magistrate Judge